## DEERING ICE CREAM CORP.

### v.

## COLOMBO, INC.

Supreme Judicial Court of Maine.

Argued Sept. 16, 1991.
Decided Oct. 28, 1991.

John M.R. Paterson, Kenneth D. Pierce, (orally) Bernstein, Shur, Sawyer & Nelson, Portland, for plaintiff.

William R. Black, Eric J. Uhl, (orally) Black, Lambert, Coffin & Rudman, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

McKUSICK, Chief Justice.

Defendant Colombo, Inc., appeals the summary judgment entered in the Superior Court (Cumberland County, *Alexander, J.*) in favor of plaintiff Deering Ice Cream Corp. on the issues of Colombo's liability and damages for breach of contract. We affirm the summary judgment on liability, but vacate on damages.

Deering manufactures and packages ice cream and related products at its plant in Portland. Colombo is a Delaware corporation that produces and sells yogurt and related products. On January 6, 1989, Deering and Colombo executed a written requirements agreement (January 6th Agreement) by which Deering contracted to process and package Colombo's line of frozen yogurt in 6 oz. cups and 7 oz. tortes. Shortly thereafter, Colombo concluded that it would also require production of a line of bulk frozen yogurt products. Because Deering's existing manufacturing facilities could not make those bulk products without additional equipment and extensive renovations, Deering and Colombo modified the January 6th Agreement on February 21, 1989, by a supplemental letter agreement (Supplemental Letter). The Supplemental Letter stated that "Deering and Colombo will share on a 50/50 basis the cost of bringing [a] new production center on line, which cost will include the purchase price of a new Cherry Burrell freezer" and that "Colombo shall receive a [production] credit of $.75 per tub." The freezer is not a refrigerated storage area, but rather a sophisticated piece of equipment for making frozen yogurt, costing about $80,000 to buy and about $30,000 to install. Acting to implement the agreement in the Supplemental Letter, Deering ordered the Cherry Burrell freezer and had it installed at its Portland facility, which it renovated to accommodate the freezer.

Some time later, Colombo decided that it did not need the bulk products after all. Colombo asserts by the affidavit of its vice president of finance that as a result of its decision representatives of the parties met on May 8, 1989, at Colombo's office in Methuen, Massachusetts, and at that meeting "determined that the freezer was no longer necessary ... [and] that Colombo would not share in the cost of the freezer." Colombo on May 16, 1989, sent to Deering a letter that Colombo asserts evidenced the contract changes it says the parties orally agreed upon at the May 8 meeting. Andrew Stickney, president of Deering, upon receiving the May 16 letter, immediately returned a copy of it to Colombo with his handwritten notations taking direct issue with the content of Colombo's letter as it relates to the present controversy. The last paragraph of Colombo's letter had stated:

5. Due to this agreed volume, Colombo will not have a need for, or the use of the freezer and will not be participating in the payment thereof.

In his prompt response Stickney added and signed the following handwritten note:

Deering and Colombo are 50/50 partners in all sunk costs of the bulk center until such time as the project ends, and we share the sunk costs to date plus any associated removal costs of the Cherry Burrell freezer.

Prior to the May 16th letter the bulk production center including the freezer had been put on line.

In early February 1990 Deering demanded of Colombo payment of $44,912.75, which Deering stated represented one half of the purchase price of the Cherry Burrell freezer and the related costs of renovation, less the production credit, as provided by the Supplemental Letter. When after seven months Colombo had not paid any part of Deering's demand, Deering brought suit in the Superior Court against Colombo seeking damages for breach of contract. Upon Deering's motion for summary judgment, the Superior Court entered judgment in its favor against Colombo in the amount of $44,912.75 plus costs and prejudgment interest.

## I.

█ We conclude that the court properly entered summary judgment in Deering's favor on the issue of Colombo's liability for breach of contract. There is no real dispute between the parties that Colombo is liable to Deering in breach of contract *if* the January 6th Agreement as modified by the Supplemental Letter controls the distribution of the costs of bringing the bulk production center on line, including the cost of the Cherry Burrell freezer. Colombo, however, contends that Deering had agreed to release Colombo from the 50/50 cost-sharing arrangement and that its May 16th letter modifies the January 6th Agreement to effect that release. The Superior Court rejected Colombo's contention and so must we.

Clause 21 of the January 6th Agreement declares that "[t]he provisions of this Agreement shall not be enlarged, varied, modified or waived by any agent or representative of Colombo or Deering except by an instrument in writing executed by both parties hereto...." The handwritten note that Deering's president affixed to the May 16th letter directly contradicted paragraph 5 of that letter, in which Colombo asserted that it "will not be participating in the payment" for the freezer. Thus, Colombo's May 16th letter with the contradictory handwritten note signed by Deering's president the next day plainly cannot constitute a "modifi[cation] ... by an instrument in writing executed by both parties" of the existing agreement for equal sharing of the cost of the bulk production line. Rather, Colombo set forth in its May 16th letter its intention to disavow any obligation to share in those costs, and in response Deering's president insisted upon enforcing his directly contradictory understanding of the existing contractual obligations of the parties. The parties never memorialized any meeting of the minds on modifying their contract in the form required by the contract documents.

Deering is entitled to partial summary judgment on the issue of Colombo's liability for breach of contract. In that regard, the evidentiary materials before us demonstrate the absence of any genuine issue of material fact and Colombo's liability follows from those facts as a matter of law.

## II.

We vacate the summary judgment entered in the Superior Court to the extent it set damages for Colombo's breach of contract at $44,912.75. That amount, taken from the affidavit of Deering's president, "represented Colombo's one-half share of the cost of renovations, the purchase price of the Cherry Burrell freezer, start-up supervision, less credits for production." Even assuming no factual dispute exists as to the accuracy of that affidavit, Deering still has not shown, as required by M.R.Civ.P. 56(c), that it is entitled to judgment on damages as a matter of law. Deering's case for summary judgment falls short because the record before us does not establish that $44,912.75 corresponds to the applicable measure of damages for Colombo's breach of its contractual obligations under the Supplemental Letter.

█ Deering's theory of damages appears to be one of full specific enforcement of Colombo's contractual commitment to pay half of the cost of bringing the new production center on line, less only a credit for actual bulk production before the parties broke off their arrangement. Contrary to that theory, breach of contract damages, as a general proposition, should be based on the injured party's "expecta-

tion interest," defined as its "interest in having the benefit of [its] bargain by being put in as good a position as [it] would have been in had the contract been performed...." *Restatement (Second) of Contracts* § 344 (1981); *see Anuszewski v. Jurevic,* 566 A.2d 742, 743 (Me.1989). The damages awarded the injured party should reflect any cost or other loss that it is able to avoid by not having to perform its side of the contract, as well as reflecting any net benefit that the injured party could reasonably realize as a result of the termination of the contract. *See Restatement (Second) of Contracts* §§ 347, 350. We do not here undertake to draw a blueprint for measuring the damages Deering is legally entitled to recover for Colombo's breach; the trial court can better apply the general principles of contract damages after a full development of the facts. We are confident, however, that to this point at least Deering has failed to show its entitlement as a matter of law to damages that reflect no offset beyond the production credit.

The entry is:

Judgment affirmed as to liability and vacated as to damages.

All concurring.